### BAY v. SANBORN.

#### (Circuit Court, D. South Dakota, S. D. March 30, 1911.)

#### No. 602.

BREACH OF MARRIAGE PROMISE (§ 31*)—DAMAGES—AMOUNT AWARDED.

    Evidence considered, and *held* to support a verdict of $25,000 damages for breach of a contract of marriage, where it showed that plaintiff had actually suffered a pecuniary loss of over $15,000 by refusing employment during the time of the engagement at the request of defendant, and that defendant was worth not less than $55,000.

    [Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 47; Dec. Dig. § 31.*]

At Law. Action by Ella R. Bay against James S. Sanborn. On motion for new trial. Denied.

Joseph Kirby, for plaintiff.
E. R. Winans and C. B. Bates, for defendant.

WILLARD, District Judge. This case stands upon a motion by the defendant for a new trial. So far as the motion is based upon the grounds of (1) newly discovered evidence; (2) insufficiency of the evidence to show a promise of marriage; (3) errors in law occurring at the trial—it is denied for reasons stated at the hearing. To what was then said may be added, however, this further consideration:

Defendant states, to be sure, in his answer, that he never intended

---

to marry her, and in his evidence (page 39) that prior to the time when he met the plaintiff at Los Angeles she had never by word or letter suggested to him that there was an agreement or promise to marry her on his part, and that that was the first time he had ever heard of it. In her letter to him of about the date of May 13, 1908, which apparently is a part of Exhibit 65½, and in which she is urging him to abandon the claim that she should receive compensation from his aunt's estate for her services, she says:

"I shall be compelled to testify that I was your agent, with your interests primarily in mind; that I never expected any remuneration from you; and all this will lead up to the inevitable admission that you and I are engaged. Dearest S., this is not my case; it is yours. You have taken me off the pay roll, and, like all women worth while, I am already to aid you in any way I can, being a labor of love; but do not lose sight of the fact that you have already amassed a sufficient competency, with nearly as much more in sight from profits in the sale of the ranch, and there is really no necessity for the pursuit of uncertain dollars."

There remains to be considered the last ground stated in the motion, namely, excessive damages. Her employment with the Kirby-Carpenter Company closed in April, 1907. That from that time she engaged in no other employment, except such as was connected with the defendant's business, is thoroughly established by the evidence; and it is just as thoroughly established that she so acted at the request of the defendant. In her letter of November 20, 1906, she said:

"During the conversation he twice asked me to become a member of the C. C. Company, as he really had more than he could attend to. Told him I was going to loaf as soon as K. C. Co. charter was surrendered in January."

In his letter of November 25, 1906, he said:

"You will never be in the employ of the C. C. Co., so long as I have one piece of bread and strength enough to break it."

In her letter of April 10, 1907, she states that on that day she had closed up the business of the Kirby-Carpenter Company. In his letter of April 14, 1907, he says:

"I have been on the jump, and will be from now on; but it makes me feel good to know your work is at an end, and that makes me want to rustle all the more, for you never shall do another day's work."

In his letter of April 17, 1907, he says:

"But then I am glad your work is now at an end, and hope from now on you will live for yourself and take it easy."

In his letter of April 28, 1907, he said:

"Tell him you are off for a year, and then, when I see you, I will suggest you ask for $5,000 per or nothing; for you are your own boss now, and nothing would please me more than for you to say that your time is worth the same and a little more."

In his letter of August 2, 1907, he said:

"Take good care of yourself, and take it easy; for you know I am to do all the work."

In the letter of March 13, 1908, above quoted, she says to him:

"You have taken me off the pay roll."

These letters entirely confirm the statement made by the plaintiff that after she left the Kirby-Carpenter Company she ceased to work at the request of the defendant, relying upon the engagement between them. After she left the employment of the Kirby-Carpenter Company, she testified that she worked all the time for the defendant until the engagement was broken in February, 1910. The correspondence between the parties entirely corroborates this statement. A part of the work that she thus did was an attempt to sell an estate of 11,000 acres in South Dakota in which the defendant was interested. In this connection she wrote between 1,500 and 2,000 letters. She had a written option from the defendant and his brother, authorizing her to sell this property. It is suggested by counsel for the defendant that she was working for herself, and not for him, and that if she had sold the estate she would have made a fortune, in which the defendant would have had no share. She testified, however, that whatever she would be entitled to would belong to the defendant, in case a sale was made, and her letters prove that this statement was true. She commenced attempting to sell the land before any option was given her. In her letter of August 1, 1907 (page 186), she said:

"I have told Mr. Baldwin, Mr. Davis, and others that there is not one dollar in the deal for me; that I am simply assisting you in finding a buyer for the land."

In her letter of May 29, 1907, she said (page 159):

"You know, dear, after the way you have been bled, I could never consent to your brother getting one cent of whatever might be realized above prices quoted me."

At the time the engagement was broken, all of the lands had been sold, except about 4,000 acres. How many of the sales were due to the efforts made by the plaintiff does not appear. It appears from her testimony and from the correspondence that her connection with the affairs of the defendant's aunt, which resulted in her taking the management of the property, amounting to over $105,000, was entirely in the interest of the defendant. He constantly insisted that a compensation should be paid for her services, and, as she testified, stated that she should receive $10,000 therefor. The correspondence between the defendant and his lawyers with reference to this matter, and the litigation which ensued, show that it was his case, and not hers.

The court charged the jury that in estimating the amount of damages they might consider the abandonment or loss of position by which the plaintiff was earning or could earn wages or salary, if occasioned by the request or act of the defendant. Laying aside the testimony relating to offers from the Lumbermen's National Bank and the Carpenter-Cook Company, and eliminating them entirely from the case, there still remains evidence to show what her services were worth during the time of this engagement. It was proven, and there is no evidence to contradict it, that she received for the three years ending in April, 1907, for her services $4,300 a year. The defendant himself in his letters apparently valued her services at $5,000 a

year; and, as has been said, he thought she was entitled to $10,000 for what she did in connection with his aunt's estate.

It is not necessary, and probably would not be proper, to consider what her services were worth to the defendant during the four years of their engagement, though it appears that he consulted her upon every possible question, business or otherwise, and apparently took her advice upon most of them. It is safe to say that a finding by the jury that she had actually lost more than $15,000 by reason of the defendant's request that she do no work could not be set aside on the ground that such finding was excessive. She testified that she told him at Los Angeles that their engagement was costing her $6,000 a year, a luxury which she could not afford. She made no charge to the defendant for any services rendered to him, and expected to receive no pay for them. She paid out on his account during the time of their engagement more than $2,200. No part of this has ever been paid. She did, however, receive after the engagement was broken, from the property of the defendant's aunt, $2,500 in settlement of what was really the defendant's claim for her services. That amount she retained, and, of course, it should be considered as a part payment of what the defendant owed her.

In the respects above noted this case is very unusual, and it may be doubted if a similar case ever occurred before, where a woman, by reason of an engagement being broken, had actually suffered a pecuniary loss of more than $15,000. The obligation of the defendant to pay this sum does not depend in any way upon the amount of money that he has. He would be under the same obligation to pay it, if he had only $5,000 as if he had $100,000. It is not the kind of damages that is usually recovered in an action of this character. Those damages are referred to in the charge of the court, wherein the jury were instructed that they could take into consideration the disappointment of the plaintiff's reasonable expectations and what would be the money value or worldly advantages of such a marriage, and also the wound or injury to her feelings and affections, and her mortification and distress of mind.

In considering the damages in these cases, the amount of property which the defendant has can be taken into consideration. He testified that he was worth $55,000. She testified that he stated to her, when he made a will in her favor, that he was worth $120,000, and the value of his interest in the ranch besides. However that may be, the difference between her pecuniary loss, over $15,000, and the amount of the verdict, $25,000, is not, in my judgment, so excessive as to justify the court in interfering with the admitted province of the jury in such a case.

The motion for a new trial is accordingly denied.